Pettingell, P. J.
Action of contract in which the plaintiff, a real estate broker, seeks to recover a commission for procuring a customer for real estate owned by the defendant. No question of pleading is involved. The trial judge found for the defendant.
The plaintiff’s declaration is in two counts. The first is for a sale by 'a written agreement of purchase and sale signed by the purchaser and the defendant, procured by the plaintiff; the other count is on an account annexed following an oral agreement of purchase and sale entered into by one Ritcher, otherwise Zirpolo, father of the defendant, and one Herbits representing the purchaser, also *126 procured by the plaintiff. The facts are fully set forth in the findings of fact made by the trial judge.
At the close of the trial the plaintiff requested the following rulings:
“1. The defendant having accepted the proposed purchaser by entering into the written contract of sale with him it is not necessary for the plaintiff to prove at the trial that the customer was able, ready and willing ; when the valid, written contract was executed, the commission of the plaintiff was earned. 2. The evidence requires a finding that the defendant was a straw’ for Ritcher and that Ritcher was the real owner of the premises. 3. The evidence warrants a finding that the defendant and the plaintiff’s customer had made a completed bargain, and that such completed bargain was made when the parties met on the premises as a result of an appointment made by the plaintiff, at which time, as Ritcher admitted on direct examination, he and the customer came to an agreement, that the defendant was willing to sell, and the customer was willing to buy, and that everything was agreed upon between them except to reduce the terms to a written paper. 4. The evidence requires a finding that the defendant and the plaintiff’s customer had made a completed bargain, and that such completed bargain was made when the parties met on the premises as a result of an appointment made by the plaintiff, at which time, as Ritcher admitted on direct examination, he and the customer came to an agreement, that the defendant was willing to sell, and the customer was willing to buy, and that everything was agreed upon between them except to reduce the terms to a written paper. 5. The agreement in this case providing by its terms that a commission of $500.00 is to be paid by the seller to Remington & Reid at the time title is to be transferred,’ did not create a condition precedent to the payment of the commission; it fixes the time beyond which the claimant need not wait for his compensation. 6. The Court is warranted upon the evidence, in finding for the plaintiff in the amount declared upon in his declaration. 7. There is not sufficient evidence *127 to warrant the Court in making a finding for the defendant.”
The trial judge gave requests 3 and 6, with the comment in each case, “The evidence warrants but does not compel such a finding.” The other requests were denied, “because inapplicable to facts found. See Findings of fact.”
The error assigned by the plaintiff is the denial of the five requests not allowed and the admission of certain items of evidence.
Under date of May 3, 1944, Marshall, the purchaser 'named in the written agreement, wrote the defendant’s attorney, that as the defendant was unable to deliver title in accordance with the agreement, he was cancelling the agreement and requesting the return of his deposit. Over the plaintiff’s objection and claim of report this letter was admitted in evidence as Exhibit 7. •
Under date of May 5, 1944, the defendant’s attorney wrote Marshall in answer to the latter’s letter, marked Exhibit 7. Over the plaintiff’s objection and claim of report this letter of May 5th was admitted in evidence and marked Exhibit 8.
This letter, marked Exhibit 8, was answered by one written by Herbits under date of May 8, also admitted in evidence over the plaintiff’s objection and claim of report, and marked Exhibit 9.
According to the docket entries the plaintiff duly filed his claim of report with the clerk in the case of each letter admitted. The report as allowed by the trial judge, however, assigns as error only the admission of the second and third letters, Exhibits 8 and 9. We consider only those items.
The trial judge made the following findings of fact:
“The plaintiff is a real estate agent or broker doing business under the name of Remington and Reid with an usual place of business at 1706 Commonwealth *128 (Brighton) Boston, Massachusetts. Mrs. Kate Nolan was his agent in these transactions. As a result of Mrs. Nolan’s reading an advertisement in a newspaper concerning the offer for sale of property numbered 16 and 18 Brainerd Boad, Boston, she telephoned the advertiser who was one Fred A. Bitcher, sometimes known as Fred A. Zirpolo of Somerville. Said Bitcher authorized the plaintiff to list the property for sale at a price of Sixteen thousand five hundred (16,500) Dollars. Said Bitcher gave said plaintiff a brief description of the property including rents, outstanding mortgage, etc. and informed her that if the property were sold, the purchaser was to sign any mortgage extension and was to assume and pay the outstanding mortgage. In the event that the plaintiff obtained a purchaser under these terms, the plaintiff was to receive a commission of Five hundred (500) Dollars from Bitcher. At some time prior to April 12, 1944, the plaintiff learned that the property stood in the name of a person or persons other than said Bitcher.
“After the property had been listed with the plaintiff, the plaintiff communicated, by his agent, Nolan, with William Herbits, a lawyer with an office at 84 State Street, Boston, Massachusetts, who the said plaintiff knew was interested in buying property. The said plaintiff told the said Herbits about the Brainerd Boad property and subsequently said Herbits looked the property over and the said Herbits and the said Nolan met, and the said Herbits gave to the said Nolan a check for Two hundred (200) Dollars together with a letter which is Exhibit 2 as follows:
‘April 6,1944
‘Bemington & Beid,
1706 Commonwealth Ave.,
Brookline, Mass,
“Gentlemen:-
• ‘I am enclosing herewith my check for $200.00 as a deposit on the purchase of the property at 16-18 Brainerd Boad, Allston, Mass., said property consisting of six apartments, title standing in the name of Fred Bicher. It is my understanding that there is now a first mortgage on the property, held by the North Avenue Savings Bank, Cambridge, Mass., in the sum of *129 $14,500.00, bearing interest at the rate of 4%% per annum, which mortgage is about to be, or has been, extended for an additional term of five years, but in any event said extension is to be obtained by the seller before delivery of title.
‘The total purchase price is $16,500.00 and the $200.00 herewith paid is to be applied towards the purchase price upon passing of papers.
‘It is understood that all appurtenances, such as sinks, stoves, awnings, screens, electrical and plumbing-fixtures, etc., shall be included in the sale of the property.
‘ The seller represents that the roof is in good condition and that the plumbing and heating installations are in good working order. Upon acceptance of this offer by the seller, formal articles of agreement will be drawn in the usual manner, and the date for the passing of papers will be mutually agreed upon. All adjustments are, of course, to be made as of the time of passing papers.
‘It is my understanding that the monthly payment of approximately $152.00 to the Bank includes interest, taxes and amortization, in accordance with the terms of the mortgage.
‘It is agreeable to me to pass papers on or about the first day of May, 1944.
Very truly yours,
WILLIAM HERBITS’
“The said Nolan, after receiving said letter and check made out a paper called ‘Application for Deed’ which listed the buyer as William Herbits and the seller as Evelyn A. Crimmins. It was the understanding between Mrs. Nolan and Mr. Herbits that a real estate agreement would be drawn up. The said Nolan had difficulty in getting Mr. Ritcher to enter into an agreement and finally the said Nolan returned the Two hundred (200) Dollars deposit check to Herbits a few days after April 6,1944. Subsequently, the said Nolan and the said Ritcher made an appointment and met with the said Herbits on the premises. The said Ritcher had with him a man by the name of Fred Y. Marshall who was introduced by said Herbits to said Nolan as, “ A friend of mine who advises me on buying property. ’ *130 Said Ritcher took said Marshall and said Herbits about the premises and arrangements were made to meet concerning the drawing up of a real estate agreement. The said Nolan met the said Marshall for the first time on this day. The said plaintiff never had any talk with Mrs. Evelyn A. Crimmins prior to April 12, 1944. After the said Marshall, Ritcher and Herbits discussed matters on the premises, Mr. Remington, the plaintiff, carried on the further details except that the said Nolan typed out' the real estate agreement, Exhibit 5. The agreement that said Nolan typed out did not give the name of the buyer. It gave the name of the seller as Evelyn Crinnins, married, and provided in part that the present mortgage on the premises was to be extended for five years at the same terms as at present, which existing mortgage the buyer does assume and agree to pay. It provided that a commission of Five Hundred (500) Dollars was to be paid by the seller to Remington and Reid at the time title is transferred and that Peter Joseph Crinnins, husband of the seller agreed to release to the buyer all statutory and other rights and interests in said premises. After the agreement was typed the plaintiff took it to the office of said Herbits and while there wrote in the name of Fred Y. Marshall of Boston as the buyer and changed the spelling of the name of Crinnins to Crimmins and added words to the agreement to the effect that the seller was to obtain the extension of the mortgage before the date of transfer of deed. The agreement was signed ‘ Fred Y. Marshall by, William Herbits, Attorney’, and a deposit of Two hundred (200) Dollars was received by said plaintiff. The real estate agreement, Exhibit 5, was also signed by Evelyn A. Crimmins. At the time of the trial, there had been no conveyance made of the property to Fred Y. Marshall.
“The said plaintiff had been to the Registry of Deeds and found out the correct spelling of the name of the holders of the record title. The title to the said property numbered 16 and 18 Brainerd Road, Brighton, stood in the name of Peter J. Crimmins and Evelyn A. Crimmins, husband and wife as tenants by the. entirety, they having taken title by deed recorded with the Suffolk Registry of Deeds, Book 6073, page 59, dated December 17, 1943. Fred Y. Marshall and William *131 Herbits would not assume and agree to pay the existing mortgage on the premises, although the agreement drawn ,by said plaintiff provided that the buyer does assume and agree to pay and was intentionally left in the agreement.
“Although said Herbits was one of .the purchasers, he did not. sign in his individual capacity, nor did Peter J. Crimmins. Evelyn A. Crimmins was not a straw for said Eátcher. No valid written contract was ever executed. The defendant and the plaintiff’s customers never made a completed bargain or agreement, nor was everything ever agreed upon between them. The plaintiff owed a duty to his principal to acquaint him, her or them with all the facts regarding the proposed sale. This, he did not do. The plaintiff never told the defendant that neither Marshall nor Herbits did not assume and agree to pay the outstanding or extended mortgage. The plaintiff did not inform the defendant that Herbits was one of the proposed buyers. The agreement, Exhibit 5, which the plaintiff drew, was not properly drawn. It did not set forth correctly the understanding between the parties. It did not set forth correctly the name of the seller. It did not set forth correctly the names of the buyers.
“So far as it is a matter of fact, the use of the words in the said real estate agreement a commission of Five hundred (500) Dollars is to be paid by the seller to Remington and Reid at the time title is transferred’ means that no commission has been earned until the deed transferring title had been delivered.
“The plaintiff did not produce a person or persons, ready, able and willing to consummate a transaction on the principal’s terms, nor did he bring about the execution of a contract in writing or a memorandum binding both principal and customers. The plaintiff has never earned his commission.
“The plaintiff duly submitted request (sic) for rulings of law. The Court denies ruling No. 1 because inapplicable to facts found. See findings of fact. The Court denies ruling No. 2 because inapplicable to facts found. See findings of fact. The Court allows request No. 3, the evidence warrants but does not compel such a finding. The Court denies ruling No. 4 because in *132 applicable to facts found. See findings of fact. The Court denies ruling No. 5 because inapplicable to facts found. See findings of. fact. The Court allows request No. 6, the evidence warrants but does not compel such a finding. The Court denies ruling No. 7 because inapplicable to facts found. See findings of fact.
“In this action enter finding for the defendant.”
The report states that it contains all the evidence “material to the question reported. ’ ’
The plaintiff’s contention is first, that under his guidance a completed written agreement was made by the parties for the purchase and sale of the property and that the purchaser being able, ready and willing was accepted by the seller.
The evidence shows that one Bitcher, otherwise Zirpolo, stated that he was the owner of the premises to be sold, his title being in the name of the defendant, his daughter, whom he said was a straw. The plaintiff’s employee, Nolan, arranged an interview between Bitcher, as the seller and Herbits, an interested purchaser, at which the premises were inspected by Herbits, following which Herbits wrote the plaintiff under date of April 6, 1944 a letter in which he stated his version of the terms of the sale. After the receipt of this letter, Nolan began to prepare a written agreement containing the terms of sale. Up to that time there had been no binding agreement as neither Nolan nor the plaintiff knew the' name of the purchaser who was to take title. After the agreement was drawn and otherwise ready for signature, the plaintiff, upon receipt of information from Herbits, added the name of Marshall as that of the purchaser. With no party agreed upon as the purchaser there was no agreement which could be enforced. Koufman v. Lennox, 265 Mass. 487, at 488, 489. The signed agreement was more than a mere memorial of terms which had been agreed upon; it contained at least one item which *133 had not been agreed upon before, the name of the purchaser.
Under the law governing such situations, where the parties enter into a written agreement of purchase and sale, the broker becomes entitled to a commission forthwith, there being nothing more for him to do.
There are, however, qualifications to this rule. The broker must act in good faith. Burnham v. Upton, 174 Mass. 408, at 409. He also must use reasonable skill and ordinary diligence in the exercise of his agency. Merchants Bank, at Baltimore v. Merchants Bank at Boston, 6 Met. 13, at 28. Hannigan v. Old Colony Trust Co., 227 Mass. 370, at 374. Gage v. Boston National Bank, 249 Mass. 449, at 452.
The situation such as existed in this case called upon the plaintiff for the preparation of an agreement of purchase and sale between the parties. By signing such an agreement the seller fixes her status as to the purchaser and enters into a relation in which her property is made subject to a new liability. Such an agreement, in exchange for that liability which the seller has assumed, should confer upon her a commensurate right created by the agreement. In this particular case the plaintiff went to the registry of deeds for information and discovered there that the defendant was not the sole owner of the property but was a tenant by the entirety. The plaintiff had had thirty years experience in such matters and it is inferable that he appreciated the significance of the discovery, but it does not appear that the discovery was communicated to the defendant, or its relation to the situation called to her attenion by the plaintiff. Instead he went ahead and drew the ’ agreement as if she were the sole owner and gave it to her father for her to sign. The agreement contained a release clause for the plaintiff’s husband to sign but apparently the plaintiff made no effort to get the husband’s signature *134 although the husband was present at the meeting at the Registry of Deeds.
Such an agreement is usually referred to in the cases as “valid” or “binding” or conferring a legal or equitable right upon the parties. Rice v. Mayo, 107 Mass. 550, at 552. Chapin v. Bridges, 116 Mass. 105, at 108. Pearson v. Nason, 120 Mass. 53, at 57. Wand v. Cobb, 148 Mass. 518. Roche v. Smith, 176 Mass. 595; at 597. Johnson, v. Holland, 218 Mass. 362, at 364. Edward T. Harrington Co. v. Waban Rose Conservatories, 222 Mass. 372. Westlund v. Smith, 291 Mass. 96, at 99.
The agreement which the defendant signed, prepared by the plaintiff, bound her to convey land to which she had, with the plaintiff’s full knowledge, only an incomplete title. It could not for that reason be the basis of a bill for specific performance. Hurley v. Brown, 98 Mass. 545, at 547. 9 American Jurisprudence, Specific Performance, 82. Nor if the purchaser refused to perform the contract had she such a title that she could succeed in an action for damages. Although the plaintiff has all the necessary data, he had prepared for his customer to sign an agreement that was worthless, in the incomplete form in which it was presented at the Registry of Deeds. In all these matters the plaintiff was the agent of the seller.
“If the duties of a sworn broker are executed in so slovenly a manner that no benefit results from them he is not entitled to recover his commissions or a compensation for his trouble.” Hamond v. Holiday, 1 C. & P. 384, 11 E. C. L. 427. 4 American & English Encyclopaedia of Law, (2d Edition) 972, “Brokers.”
The trial judge found that the plaintiff “has never earned his commission” not having brought about “the execution of a contract in writing or a memorandum binding both principal and customers”; that “the agreement was not *135 properly drawn” and did not set forth correctly the name of the seller.
We feel that the plaintiff did not use the due diligence required of him by his employment and that because of his poor workmanship, lack of the requisite skill or proper attention to his employment he was negligent in securing the execution of a valid agreement and ought not to recover,
There was no prejudicial error in the denial of the first request.
There was no error in the denial of the plaintiff’s second request.
“The evidence requires a finding that the defendant was a straw for Ritcher and that Ritcher was the real owner of the premises.”
The only evidence on this point was the testimony of Ritcher that his daughter held title to the premises in question as a straw and the further testimony of the plaintiff that at the registry of deeds he found that title was in the name of the defendant, Ritcher’s daughter and that of Fred J. Crimmins, her husband, as tenants by the entirety. Mrs. Crimmins could be found to be a straw only if Ritcher’s testimony was believed. The fact that it was not contradicted did not prevent the trial judge from disbelieving it. Ashapa v. Reed, 280 Mass. 514, at 517. Pearson, Receiver v. O’Connell, 291 Mass. 527, at 529. A finding that the defendant was a straw may have been warranted but was not required. See Memishian v. Phipps, 311 Mass. 521, at 522. At the time that the request was filed the question of credibility was yet to be decided. If the trial judge disbelieved Ritcher’s testimony, a reasonable inference that from the testimony that the title was in the name of a husband and wife as tenants by the entirety, was that the defendant was not a straw.
*136 The fourth request which was denied was:
“The evidence requires a finding that the defendant and the plaintiff’s customer had made a completed bargain, and that such completed bargain was made when the parties met on the premises as a result of an appointment made by the plaintiff, at which time, as Eitcher admitted on direct examination, he and the customer came to an agreement, that the defendant was willing to sell, and the customer was willing to buy, and that everything was agreed upon between them except to reduce the terms to a written paper.”
What has been said about the second request applies as well to this one. Such a ruling may have been warranted but was not required.
“Upon the testimony of the plaintiff the jury would be warranted in finding but were not required to find that the oral agreement expressed fully the terms of the contract and that the proposed written agreement was intended by the parties to be a memorial or record of their final acceptance of it.” Bines v. Rosen, 263 Mass. 562, at 563, 564.
In this connection it is to be remembered that a question of fact is involved, whether or not anything remained to be agreed upon when the oral agreement was made. That agreement, at which, according to Zirpolo, “everything that had been talked about was agreed upon except to reduce it to writing,” was. April 10th or 11th. The written agreement was not drawn up until two or three days later. When it was prepared the plaintiff who drew it, according to his testimony, left out the name of the purchaser to be filled in later “because he did not know then how title was to be taken.” In other words at the time the oral agreement was made which the plaintiff relies upon in his request as binding the defendant, it was not known who the pm chaser was to be.
*137 “In.order that the plaintiff may recover the instrument relied upon must be found to state the essential terms of a contract by which the parties intended to be bound with sufficient definiteness and clarity that a court by interpretation with the aid of existing and contemplated circumstances may enforce it.” Geo. W. Wilcox Inc. v. Shell &c Products Co., 283 Mass. 383, at 387, 388.
The oral agreement was not enforceable because at the time it was made the purchaser had not been agreed upon and was not so determined until a later time. With a party to the agreement not yet settled upon there was no contract which could be enforced. Kaufman v. Lennox, 265 Mass. 487, at 488, 489.
There was no error in the denial of the plaintiff ’s fourth requested ruling.
There was error in the denial of the plaintiff’s fifth requested ruling, which was:
“5. The agreement in this case -providing by its terms that ‘a commission of $500 is to be paid by the seller to Remington & Reid at the time title is to be transferred’, did not create a condition precedent to the payment of the commission; it fixes the time beyond which the claimant need not wait for his compensation.”
In Alvord v. Cook, 174 Mass. 120, the agreement stated that the broker’s commission should be paid at the time the agreement between the purchaser and seller “is carried into effect”. The trial judge admitted oral evidence to explain the situation of the parties when the writing was made but not to enlarge, vary or contradict the writing and then found as fact that the writing should not be interpreted as making the payment of the plaintiff’s- commission conditional. The Supreme Judicial Court, this- was an equity case, said at page 125, “We think that this clause was in *138 serted for the purpose of fixing the .time beyond which the plaintiffs were not called upon to wait, and not as a condition for payment.”
In Munroe v. Taylor, 191 Mass. 483, at 485 the agreement between the seller and the broker provided that the commission should be all that the broker could get as a selling price over a stated sum. It was held that the sale had to be completed before his commission could be determined. Clark v. Hovey, 217 Mass. 485, and Goldman v. Eisenberg, 256 Mass. 566, are cases similar on the facts to Munroe v. Taylor, supra. In Rosenthal v. Schwartz, 214 Mass. 371, the commission was to be paid when “ title is passed”. The trial judge found for the plaintiff. The court said at page 373,
‘‘The transfer of title merely designated the period beyond which the plaintiff need not wait for his compensation.”
The case cites Alvord v. Cook, supra.
In Lord v. Williams, 259 Mass. 278, the broker’s commission was to be paid “on passing title”. The trial judge submitted to the jury the question whether or not the employment of the broker was to find a customer or a purchaser who was ready, willing and able to buy the property on the owner’s terms, or one which was actually to bring about a sale of the land; upon these issues it was held that the evidence was rightly submitted to the jury.
The court continued, at page 284,
“The defendant’s request on the matter of passing title rests upon the assumption that the plaintiff’s right was conditioned on the passing of title. As has been said, the issue in this respect on the-facts of the case was one of fact and not of law.”
In Canton v. Thomas, 264 Mass. 457, at 459; the Supreme Judicial Court said of this situation,
*139 “We are unable to perceive any substantial difference 'between a contract to pay a broker’s commission when an ‘ agreement is carried into effect’, and a similar contract to pay ‘when papers are passed’, pursuant to such an agreement. A condition of the payment of the commission would be expressed if the words ‘if and when papers are passed’ had been used in the contract here in issue in place of the words ‘when papers are passed’. In somewhat similar circumstances, ameliorating circumstances often are found which call for a different result. Munroe v. Taylor, 191 Mass. 483. Clark v. Hovey, 217 Mass. 485, 487. Carpenter v. Blake, 251 Mass. 47. Brown v. Jacobs, 254 Mass. 474. Lord v. Williams, 259 Mass. 278. Pagum v. White, 259 Mass. 437. This interpretation may be not that which an inexperienced owner might think the contract to mean. But when cases arise not fairly distinguishable in their facts from Alvord v. Cook, 174 Mass. 120 and Rosenthal v. Schwartz, 214 Mass. 371, the rule there established must be followed.”
The request should have been given; whether or not its denial was prejudicial error is another matter. The specific finding of the trial judge was that there was no such performance by the plaintiff as entitled him to recover a commission.
If no error is found other than the denial of the 5th request, that error is not prejudicial because that request had nothing to do with the main issues before the court but dealt with a matter entirely incidental to those issues. If the plaintiff was not entitled to recover at all, a mistake of the court as to whether his commission was conditional, because of the words used, is not prejudicial. American Malting Co. v. Southern Brewing Co., 194 Mass. 89, at 97. Webber v. Old Colony Street Railway, 210 Mass. 432, at 442.
The seventh requested ruling which was denied was,
“7. There is not sufficient evidence to warrant the Court in making a finding for the defendant.”
*140 "What has been stated in the earlier pages, discloses that there was evidence sufficient to warrant a finding for the defendant. There was no prejudicial error in the denial of this request.
There was prejudicial error, however, in the admission over the plaintiff’s objection of two letters, one dated May 5,' 1944 and marked Exhibit 8 and the other dated May 8, 1944 and marked Exhibit 9.
The letter of May 5th was from the defendant’s attorney to Marshall, and that of May 8th was from, Herbits to the defendant’s attorney, and each related to the purchaser’s refusal'to go on with the contract which had been signed.
The plaintiff, a broker, is suing a customer in contract in an attempt to recover a commission on one count on a formal contract and another on an account annexed following an oral contract. If either contract was valid the plaintiff could recover although the sale was not consummated. The consummation of the sale, therefore, was not an issue, Curran v. O’Donnell, 236 Mass. 357, at 359. Stuart v. Newman, 241 Mass. 33, at 36. Cole v. Van Etten, 263 Mass. 278, at 281. Canton v. Thomas, 264 Mass. 457, at 459. The letters were not admissible as relating to any issue before the Court. Ellis v. Short, 21 Pick. 142, at 144. It is impossible to say that this error was wholly unimportant or had no improper influence on the mind of the court. Priest v. Groton, 103 Mass. 530, at 543.
The finding for the defendant is vacated and the case is to stand for a new trial.